IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HUMBERTO MOLINA, AS JUDGMENT CREDITOR OF ALBERTO VARGAS; *Plaintiff* | § § § § | |
| -vs- | § § | SA-21-CV-00363-XR |
| AMERICAN ACCESS CASUALTY COMPANY, A-MAX AUTOMOBILE INSURANCE COMPANY, *Defendants* | § § § § § | |

## ORDER

On this date, the Court considered Plaintiff's motion for remand (ECF No. 8) and Defendant A-Max Automobile Insurance Company's response (ECF No. 13), and Plaintiff's second motion for remand (ECF No. 19). After careful consideration, the motions are **DENIED**.

## BACKGROUND

This case arises out of an insurance dispute between Plaintiff Humberto Molina and Defendants American Access Casualty Company ("AACC") and A-Max Automobile Insurance Company ("A-Max"). A-Max was an insurance agency that facilitated the issuance of an AACC policy (the "Policy") to Annette and Alberto Vargas, covering their 2008 Mitsubishi Lancer ES (the "Vehicle"). Molina alleges that on or about September 8, 2017, he suffered severe injuries as a result of a collision with Mr. Vargas while Vargas was driving the Vehicle. Plaintiff subsequently filed suit against Mr. Vargas in state court. On December 5, 2019, Plaintiff obtained a default judgment against Mr. Vargas and was awarded $200,000 in damages, along with costs and interest. *See* ECF No. 1-1 at 14–15. Plaintiff filed suit on March 8, 2021, in the 438th Judicial District Court, Bexar County, Texas, bringing claims for breach of contract, bad faith, violations of the Texas Deceptive Trade Practices Act ("DTPA") and Texas Insurance Code, fraud, and declaratory judgment against Defendants. ECF No. 1-1 at 7–13.

A-Max was served with citation on March 12, 2021. ECF No. 5 ¶ 16. On April 9, 2021, A-Max removed the case to this Court on the basis of diversity jurisdiction without obtaining AACC's consent to removal, which A-Max asserts was not required because AACC had not been properly served at the time of removal.[1] ECF No. 5 ¶ 19; *see* 28 U.S.C. § 1446 ("When a civil action is removed solely [on the basis of diversity jurisdiction], all defendants who have been properly joined *and served* must join in or consent to the removal of the action.") (emphasis added). According to A-Max, this Court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between the parties. ECF No. 5 ¶¶ 4–15. A-Max alleges that for diversity purposes Plaintiff is a citizen of Texas and AACC is a citizen of Illinois. *Id.* ¶¶ 5–6. Although A-Max itself is admittedly a citizen of Texas, A-Max contends that its citizenship should be disregarded because it is not a proper party under the doctrine of improper joinder. *Id.*

Plaintiff timely moved to remand the case to state court, arguing that A-Max's removal was procedurally defective. *See* ECF No. 8. A-Max opposes remand. ECF No. 13.

## DISCUSSION

### I. Procedural Sufficiency of Removal

Plaintiff asserts that A-Max's removal was procedurally deficient under 28 U.S.C. § 1446(a) because A-Max (1) failed to attach the docket sheet from the state court action pursuant to this Court's standing order, (2) failed to attach the citation directed to AACC to the Notice of

---

[1] The parties' supplemental briefing on service of AACC does indicate that it was not served prior to removal. In his original petition, Plaintiff requested service on AACC through "its registered agent: Yessi K. Santamaria Gavidia at 3521 W. Walnut Hill Lane 2022, Irving, Texas 75038." ECF No. 11-1. However, AACC asserts—and the Texas Department of Insurance Report filed with AACC's briefing confirms—that the Anderson Law Firm is the proper agent for service of process on AACC. *See* ECF No. 18; ECF No. 18-1. In addition, Plaintiff filed a return of service on AACC showing service of process on the proper agent, Anderson Law Firm, on May 24, 2021, several weeks after the removal of this action by A-Max. ECF No. 17.

Removal, and (3) failed to identify the underlying case that resulted in a judgment against Mr. Vargas as a "related case" in Section VIII of the Civil Cover Sheet. ECF No. 8 at 4.

With respect to Plaintiff's first challenge to the procedural sufficiency of removal, it appears that A-Max did in fact attach the state-court docket sheet to the Notice of Removal. *See* ECF No. 1-4. Plaintiff's second challenge also fails. A-Max's failure to include the citation directed to AACC did not render the removal procedurally defective because AACC had not been served at the time of removal. Section 1446(a) requires that the notice of removal "contain[] a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders *served upon such defendant* or defendants in such action." 28 U.S.C. § 1446(a) (emphasis added). Because the citation directed to AACC had not been served at the time of removal, A-Max was not required to include it with the notice of removal. Finally, with respect to Plaintiff's third procedural challenge, the instructions to Form JS 44, the Civil Cover Sheet, clearly indicate that Section VIII "is used to reference related *pending* cases, if any."[2] Given that the underlying case resulted in a judgment against Mr. Vargas, it would appear to the Court that the case against him, though related to this action, was no longer pending at the time of removal and thus need not have been listed in Section VIII of the Civil Cover Sheet.

Plaintiff has filed a second motion for remand, in which he asserts that removal by A-Max, an in-state defendant, is barred by the forum defendant rule. ECF No. 19. Although the second motion is untimely, the Fifth Circuit has held that once a motion to remand is timely filed, the Court may remand the case on any procedural ground, even one not raised in the motion. *See Schexnayder v. Entergy La., Inc.,* 394 F.3d 280, 284 (5th Cir. 2004). Stated differently, although the Court may not *sua sponte* remand for procedural defects in the removal process, once a plaintiff

---

[2] *See* Form JS 44, Civil Cover Sheet, https://www.uscourts.gov/sites/default/files/js_044.pdf (emphasis added).

seeks remand, the Court is entitled to do so for procedural reasons not raised in the plaintiff's motion.[3] *See id.* (rejecting removing defendant's argument that district court was not entitled to remand on grounds not raised by motion to remand). The forum-defendant rule is a procedural rule and not a jurisdictional one. *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 392–93 (5th Cir. 2009). Accordingly, before addressing A-Max's improper joinder argument, the Court will consider whether removal by A-Max, an in-state defendant, is procedurally defective based on the forum defendant rule.

"A defendant removing a case on diversity grounds must not only demonstrate that the case satisfies the requirements of 28 U.S.C. § 1332(a), but must also clear the 'additional hurdle' of 28 U.S.C. § 1441(b)(2), or the 'forum defendant rule.'" *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378 (7th Cir. 2000). Under the forum defendant rule, a suit that is "otherwise removable solely on the basis of [diversity of citizenship] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). In light of the forum defendant rule, Plaintiff asserts that a properly served, in-state defendant such as A-Max cannot remove an action to federal court on the basis of its own improper joinder. *See* ECF No. 19 at 5–6.

The Fifth Circuit recently addressed the forum defendant rule in the context of "snap removal"—removal prior to service on all defendants—in *Texas Brine Co. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020). It concluded that "[a] *non*-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be 'properly joined and served' is a citizen of the forum state." *Id.* at 487 (emphasis added). However, it did not address

---

[3] The logic is that, by moving for remand, a plaintiff is expressing his or her desire not to be in federal court. In contrast, it is reasonable to assume that when a plaintiff does not seek remand they are consenting to any procedural defect in removal.

4

whether in-state defendants who have been served but assert that they have been improperly joined can remove to federal court on the basis of diversity jurisdiction.

In condoning snap removal by *non*-forum defendants, the Fifth Circuit emphasized that, under the circumstances of the case, "snap removal [was] at least rational" because it did not offend the underlying principles of either the forum-defendant rule or diversity jurisdiction: "Of some importance, the removing party is *not* a forum defendant. Diversity jurisdiction and removal exist to protect out-of-state defendants from in-state prejudices." *Id.* at 486–87 (citing *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 404 (5th Cir. 1987)). It follows that diversity jurisdiction does *not* exist to protect forum defendants from the prejudices of their own state. *See Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013) ("[T]he forum defendant rule disallows federal removal premised on diversity in cases where the primary rationale for diversity jurisdiction—to protect defendants against presumed bias of local courts—is not a concern because at least one defendant is a citizen of the forum state."); *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 499 (3d Cir. 1997) ("If diversity jurisdiction exists because of a fear that the state tribunal would be prejudiced [against] the out-of-state plaintiff or defendant, that concern is understandably allayed when the party is joined with a citizen from the forum state."); *Lively*, 456 F.3d at 940 ("[T]he need for such protection is absent, however, in cases where the defendant is a citizen of the state in which the case is brought.").

Further, if one of the aims of the forum defendant rule is to "limit gamesmanship," *Texas Brine*, 955 F.3d at 487, allowing removal by forum defendants would appear to be somewhat counterproductive. For example, permitting an in-state defendant to independently remove an action from state court and be dismissed from the case on the basis of its own improper joinder would deprive the state court of the opportunity to evaluate the sufficiency of claims asserted

against one of its own citizens. That is, an in-state defendant's assertion that it is not a proper party to a state court action is better presented to the state court in the form of a motion to dismiss than under the guise of a jurisdictional argument before a federal court. Removal by "improperly joined" forum defendants would also leave the remaining parties in a forum they never sought in the first place, which, if not gamesmanship, is at the very least a bizarre and perhaps inconvenient outcome.

In short, *Texas Brine* confirms the traditional understanding that the non-forum defendant is the removing defendant: "[a] non-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be 'properly joined and served' is a citizen of the forum state." 955 F.3d at 487. Nonetheless, the Fifth Circuit's conclusion that the forum defendant rule permitted snap removal was based on the "plain-language reading" of 28 U.S.C. § 1441(b)(2), which provides that:

> [a] civil action otherwise removable solely on the basis of [diversity of citizenship] may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2) (emphasis added). Although *Texas Brine* focused on whether the in-state defendant had been properly served, its analysis applies equally to the requirement that the in-state defendant be "properly joined." Nothing in the statute appears to prohibit removal by a forum-defendant who asserts that it has been improperly joined to the action. Plaintiff has failed to identify—and the Court has been unable to locate—any cases that were remanded to state court on this basis. "The plain-language reading of the forum-defendant rule as applied in this case does not justify a court's attempt to revise the statute." *Texas Brine*, 955 F.3d at 487. Accordingly, the Court concludes that A-Max's removal of this action on the basis of its own improper joinder was not barred by the forum defendant rule.

6

## II.     Improper Joinder

### A.     Applicable Law

A defendant may remove an action to federal court where the matter in controversy exceeds $75,000 and is between "citizens of different states." 28 U.S.C. § 1332(a); 28 U.S.C. § 1441(a). Diversity jurisdiction typically requires "complete diversity" between all plaintiffs and all defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

The court must evaluate the removing party's right to remove "according to the plaintiffs' pleading at the time of the petition for removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *see also Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) ("The jurisdictional facts that support removal must be judged at the time of removal."); *Martinez v. Pfizer Inc.*, 388 F.Supp.3d 748, 761 (W.D. Tex. 2019) ("because jurisdiction is fixed at the time of removal, the jurisdictional facts supporting removal are examined as of the time of removal").

A removing party can establish federal jurisdiction based on 28 U.S.C. § 1332 by demonstrating that an in-state defendant has been "improperly joined." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). To establish improper joinder, a removing party must show an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). A plaintiff cannot establish a cause of action against an in-state defendant if there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

7

In determining whether joinder was proper, the focus is on the joinder, not on the merits of the case. *Id.* A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. However, in some cases a plaintiff may state a claim, but misstate or omit discrete facts that would determine the propriety of joinder; in such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, 385 F.3d at 573. The burden is on the removing party, and the burden of demonstrating improper joinder is a heavy one. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999)).

**B.      Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio,*

*L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir.2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir.2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

"Claims alleging fraud and fraudulent inducement are subject to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *Schnurr v. Preston*, No. 5:17–CV–512–DAE, 2018 WL 8584292, at *3 (W.D. Tex., May 29, 2018). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. VMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Directly put, the who, what, when, and where must be laid out." *Id.* at 178. "Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5th Cir. 1968). "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).

"Although the language of Rule 9(b) confines its requirements to claims of . . . fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. March 31, 1998). Thus "[c]laims alleging violations of the

Texas Insurance Code and the DTPA and those asserting . . . negligent misrepresentation are subject to the requirements of Rule 9(b)." *Id.*

In a Rule 12(b)(6) analysis, all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

**C.     Analysis**

Plaintiff has asserted claims against both A-Max and AACC in connection with the issuance of the Policy. However, is it impossible to discern A-Max's role in issuing the Policy from the petition because, as A-Max points out, the petition "fails to state any specific actionable conduct [by A-Max] sufficient to support the causes of action asserted against it." *See* ECF No. 5 at 3. Instead, the original petition generically asserts allegations and claims against all "Defendants" collectively and fails to allege any representation specifically made by A-Max or the existence of privity between A-Max and Mr. Vargas or A-Max and Plaintiff. Because the petition omits discrete facts that would determine the propriety of joinder, the Court finds it necessary to pierce the pleadings and conduct a summary inquiry to establish each Defendant's functions with respect to the Policy. *Smallwood*, 385 F.3d at 573.

Documents attached to Plaintiff's second motion for remand indicate that A-Max is an "independent insurance agent," ECF No. 19-4 at 3, and that AACC was the insurer under the Policy, *see* ECF No. 19-3 at 10–19. Moreover, AACC admitted in its answer that it issued the Policy to Mr. Vargas. *See* ECF No. 14 at 3. Thus, the Court concludes that A-Max was an independent agent responsible for placing the Policy under which AACC was the insurer.

As the judgment creditor of Mr. Vargas—and the assignee of his rights under the Policy—Plaintiff has asserted claims against A-Max for breach of contract, bad faith, violations of the DTPA and Texas Insurance Code, and fraud. ECF No. 1-1 at 4–9. Plaintiff's failure to set forth specific factual allegations with respect to A-Max's conduct is ultimately fatal to his claims against A-Max, however. To the extent that Plaintiff's claims arise out of the terms of the Policy itself, Plaintiff cannot plausibly recover from A-Max because A-Max is not a party to the Policy. To the extent that Plaintiff's claims against A-Max arise out of an alleged misrepresentation about the terms of the Policy, they fail to satisfy the heightened pleading requirements of Rule 9(b).

### 1. *Plaintiff's claims for breach of contract and bad faith arise out of the Policy*

In Texas, a claim for breach of contract requires "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston 2005, pet. denied)). Because A-Max was not the insurer under the Policy—and because Plaintiff has failed to allege any independent contractual relationship between A-Max and Mr. Vargas—the Court cannot reasonably infer the existence of a valid contract that would allow Plaintiff to recover from A-Max.

Plaintiff's bad faith claim similarly arises out of the insurer's obligations under the Policy: Plaintiff alleges that the "insurance contract issued by Defendant . . . gave rise to a duty of good faith and fair dealing," which Defendant "breached . . .by denying payment of a covered claim." ECF No. 1 at 5. At bottom, the damages Plaintiff seeks to recover arise from AACC's alleged failure to defend and settle on behalf of its insured—Vargas—and adequately compensate him for his injuries.

Plaintiff does not allege—and there is no plausible reason to believe—that A-Max had the authority to deny (or pay) the claim on AACC's behalf. A-Max was not in contractual privity with Plaintiff, and Plaintiff does not contend that it was. The Court need not "strain to find inferences favorable to [Plaintiff]" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions" about the existence of such a contractual relationship. *Phillips*, 401 F.3d at 642.

### 2. *Plaintiff's claims sounding in fraud are not pled with sufficient particularity*

Unlike Plaintiff's claims for breach of contract and bad faith, his claims against A-Max sounding in fraud and misrepresentation do not necessarily fail simply because A-Max was not an insurer under the Policy. Indeed, Texas courts have acknowledged that a sales agent may be individually liable when the agent misrepresents specific policy terms prior to a loss, and the insured's reliance upon that misrepresentation actually causes the insured to incur damages. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex. 1998). The Fifth Circuit has also recognized that under the Texas DTPA, "a sales agent may be individually liable when the agent misrepresents specific policy terms prior to a loss, and the insured's reliance upon that misrepresentation actually causes the insured to incur damages." *Griggs*, 181 F.3d at 701. In *Griggs*, the court affirmed the district court's denial of a motion to remand based on the improper joinder of an insurance agent by distinguishing "non-actionable puffery" from "actionable

representations of specific material fact." *Id.* at 701–02. The insurance agent's statements in that case, which the court classified as "non-actionable puffery," were that "[the insurer] would provide timely and professional service, and that she, [the agent], would personally handle any questions or problems that might arise." *Id.* at 700.

Here, Plaintiff has failed to allege even puffery. Plaintiff's allegations do little more than assert wrongdoing by "Defendants" in broad and vague terms and recite the statutory language providing the basis for his claims. For example, Plaintiff alleges that "Defendant's acts described above violated Texas Insurance Code chapter 541 by . . . misrepresenting a material fact or policy provision relating to the coverage at issue." ECF No. 1-1 at 6. Plaintiff further asserts that Defendants violated the DTPA by "representing that goods or services [had] sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they [did] not have," and "that goods or services are of a particular standard, quality or grade . . .[when] they [were] of another." *Id.* at 7 (mirroring the language in Sections 17.46(b)(5), (7) of the DTPA). Such legal conclusions are not entitled to the presumption of truth and must be supported by other factual allegations. The petition does not identify any specific statements made by, or on behalf of A-Max, or explain how those statements amounted to misrepresentations, instead referring to both Defendants' conduct collectively as "the action described above." ECF No. 1-1 at 6, 8. Plaintiff's statutory claims fail to allege with sufficient specificity the "who, what, when, and where" of the alleged misrepresentations and must be dismissed. *Williams*, 112 F.3d at 177.

Plaintiff's claim for common law fraud fails to satisfy Rule 9(b) for the same reasons as his claims under the Texas Insurance Code and the DTPA. The petition simply recites the elements of a cause of action for fraud, alleging that (1) "Defendant made false representations knowing they were false" and (2) "intended [Mr. Vargas] to rely on and/or had reason to expect that [he]

13

would act in reliance on the false representations," and (3) Mr. Vargas "justifiably relied" on those representations. ECF No. 1-1 at 9. Plaintiff fails to offer a single fact to support this theory of liability, let alone provide the heightened level of factual support required under Rule 9(b). Plaintiff does not identify the A-Max agent or agents who made the alleged misrepresentations, when or where the representations were made, or how the acts constituted a misrepresentation. Plaintiff has not asserted factual allegations with the particularity required to state a claim for fraud and his claim must be dismissed. *Williams*, 112 F.3d at 178.

Because there is no reasonable basis to predict that Plaintiff might be able to recover against A-Max, the Court concludes that it has been improperly joined and must be dismissed from this action. *Smallwood*, 385 F.3d at 573.

## CONCLUSION

For the reasons stated herein, Plaintiffs' motions for remand (ECF Nos. 8 & 19) are **DENIED**. The Court concludes that A-Max was improperly joined. Accordingly, the Court will disregard A-Max's citizenship and exercise subject matter jurisdiction over the remaining defendant, AACC. All claims against Defendant A-Max are hereby **DISMISSED WITHOUT PREJUDICE**.

It is so **ORDERED**.

SIGNED this August 17, 2021.

        XAVIER RODRIGUEZ
        UNITED STATES DISTRICT JUDGE